[245] WARD AND MARTIN vs. LATTIMER, BAGBY & CO. — Appeal from Red River County.

In a suit against two defendants, both of whom, the petition alleges, reside in Red River county, and process against both is directed to the sheriff of that county, but is served by him only on one: *Held*, that the law makes no provision for sending process against the defendant not served, to another county; and service by the sheriff of L. county, on such defendant, of process from R. R. county, directed to him for that purpose, is a nullity. [8 Tex. 36, 295; 19 Tex. 115.]

A promise to pay in "cash notes" is not equivalent to a promise to pay the nominal amount in *money*. In a suit upon a note payable in "cash notes," the value of the notes must be ascertained before a judgment can be rendered. [21 Tex. 466; 30 Tex. 53.]

The facts of this case are stated in the opinion of the court, delivered by Mr. Justice LIPSCOMB.

*Martin* and *Epperson*, for plaintiffs in error.

*Morrill*, for defendant in error.

LIPSCOMB, J.   This action was brought in the district court for the county of Red River, by the defendants in error, against the plaintiffs, on two notes in writing under seal, as follows, i. e.:

One day after date, we promise to pay Lattimer, Bagby & Co., or order, four hundred and sixty-four dollars and twenty-

nine cents in cash notes due since the first day of January, 1845, for value received of them. Witness, our hands and seals, this 17th February, 1845.     (Signed)

WM. WARD, [L. S.]

B. H. MARTIN. [L. S.]

Received on the within note, sixty-nine dollars and nine cents.  April 12, 1845.     (Signed)

LATTIMER, BAGBY & CO.

(2d Note.) On or before the twenty-fifth of December next, we promise to pay Lattimer, Bagby & Co., or order, [246] five hundred and forty-two dollars and twenty-nine cents in cash notes then due, for value received, as witness our hands and seals, this 17th of February, 1845.

(Signed)     WM. WARD, [L. S.]

B. H. MARTIN, [L. S.]

The summons issued jointly against the two defendants to the sheriff of Red River county, on which the sheriff made the following return: " Came to hand and executed, 14th day of November, 1846, by delivering to William Ward a copy of the petition and summons." There is nothing shown as to what was done by the sheriff in relation to the other defendant; as to him there is no return. On the 23d of November, 1846, a summons was issued for the other defendant, Martin, directed to the sheriff of Lamar county, which was returned by the sheriff, executed on Bennett H. Martin by delivering to him a certified copy of the petition and writ, November 30, 1846. The separate answer of Ward was filed by counsel; then follows a judgment *nisi*, which purports to be against the "*defendants.*" Then follows a judgment as follows, i. e.: " This day came the plaintiff and the '*defendants*' by their attorneys, and this case being submitted to the court without the intervention of a jury, after the inspection of the papers, the *plaintiff* having filed his cause of action, it is therefore considered by the court that the plaintiff have and recover of the *defendants* the amount set forth in their petition," etc., etc.

There was no statement of facts nor bill of exceptions; the

case comes before us by a writ of error; consequently we can only inquire into such errors as may be apparent on the record. The first error relied on is the issue of the summons to the county of Lamar, when the petition showed that both of the defendants resided in the county of Red River when the suit was instituted. . Our statute authorizes a *branch writ* to be issued when the defendants reside in different counties, but makes no provision for sending a summons out of the county when the defendants all reside in the [247] same county where the suit is instituted; consequently the service by the sheriff of Lamar county was a nullity, and the defendant Martin not bound to pay any regard whatever to it. If he had voluntarily made his appearance afterwards, the summons might have been considered as waived, and the service of the summons would have been wholly unnecessary. This, the defendants in error contend, was the case, and that the record will bear no other construction; they insist that the use of the plural, *defendants*, in the judgment of the court is conclusive that the defendants both appeared by their counsel. If there had been legal service of process on both, this would certainly have been the fair presumption from the terms used in the judgment, but then when the record shows there had been no legal service on Martin, together with the additional circumstances that the separate answer of Ward had been filed by counsel, the presumption would be rebutted; these facts considered, leave no doubt that the addition of the letter " s," whereby the word defendants was made to include both, proceeded from the awkwardness of the clerk; as a further evidence that this was the case, we need but turn our attention to the fact that the word plaintiff is used instead of plaintiffs. It does not seem to have been thought material whether the singular or plural were used in reference to the parties to the suit; we can not permit such presumption to outweigh the positive facts, that there had been no legal service to bring the defendant Martin into court, and that the defendant Ward had filed, by counsel, his own separate answer. We are, therefore, constrained to believe that Martin was not before the

court, and consequently no judgment could be rendered as long as his name continued a party in the suit, without bringing him before the court.

There is another ground of error relied on by the plaintiffs in error, in this, that the notes sued on were treated as money contracts, and as sufficient evidence of the amount of indebtedness, without resort to proof of the value of the cash [248] notes in which they were made payable. There has been, it is believed, some diversity of opinion as to the legal effect of the term "cash notes," as used in the two notes sued on; by some it has been contended that as notes are not property, that they are to be dropped as unmeaning and senseless; that therefore a promise to pay a given sum of money *in cash notes* is an absolute promise to pay so much money; this reasoning is far from satisfactory, for although a cash note would not be property in the technical sense of the term, it would not follow necessarily that the parties attached no meaning or importance to the word; in truth, it would seem much more reasonable to suppose they meant a chose in action calling for the stipulated amount, and further, that they did mean to make a difference between *money* and such *cash note.* That such was the intention of the makers of the notes receives further confirmation by the peculiar manner in which the notes are framed; the first promises that the cash notes shall be due some time before the date of the note, thereby securing to the payees the interest on such notes as were to be given in payment before the date of the note sued on; the other provided that the notes to be received in payment should be due at the time they were to be offered.

Were these notes, then, absolute promises to pay money, such as would leave nothing to be proven to establish the amount, and on which a judgment by default would have been final without the intervention of a jury? We think not, because the use of the words *cash notes* creates the presumption that the parties intended to give some effect to them, and to designate a payment different from and more favorable to the party promising, than the payment of money. We believe, at all events, that it should have been left to the jury to decide

what was meant by the use of the terms, and also to say if they meant some other thing and the value of such thing. I recollect reading in an opinion of Judge Cowen, on the vexed question of latent and patent ambiguities, that he puts a case that once occurred before him of a suit [249] being brought on a promise in writing to pay so much money in *deal*. The judge said that he was totally at a loss as to what meaning should be attached to the word *deal*, but by leaving it to the jury on proof, it was rendered perfectly intelligible. It was to be paid in work in the maker's trade, that is to say in blacksmith's work, the maker being a smith. No rule of evidence would have been violated; it would not have been altering a written contract by parol; it would have been only showing what the parties really meant. We do not know how much injustice would be done by undertaking to say that all such promises were absolute for the payment of so much money. The parties may have intended something else, and if so, such intention should not be defeated by an arbitrary rule of construction that would render them senseless and of no effect.

It is likely that a man would often be willing to give a much higher price for property, payable in notes due to him, than he would be willing to pay in money. And if he so contracted, neither the law nor reason would hold him liable to pay the amount in cash. The difference between payment in *cash notes* and cash can only be ascertained by a jury. The judge, in the case at bar, seems to have treated them as absolute and unqualified promises to pay money, and gave judgment for the money without any other proof. The jury having been waived, the inference would have been that the judge had heard the evidence of the value, if this presumption was not repelled by the record, which shows that he did not hear any other testimony, and that his judgment was founded on the notes alone. We therefore believe that on both the grounds we have noticed, the judgment ought to be reversed and the cause remanded.