## J. W. THOMPSON v. N. L. MILLS.

Decided March 29, 1907,

**1.—Practice—Ruling on Demurrer.**

Trial courts should rule on demurrers when presented and before proceeding to hear evidence, but a failure to do so is not always reversible error.

**2.—Pleading—General Demurrer.**

If the facts stated in a pleading show liability and there is a prayer for general relief a general demurrer should be overruled even though the pleader has mistaken his remedy.

**3.—Agency—Evidence.**

Agency and the authority of the agent may be shown by circumstantial evidence. Acts of the agent in the matter of his employment before and after the date in question are competent evidence. Evidence considered, and held material and competent to show the fact and extent of agency.

**4.—Findings of Fact—Practice.**

A trial court can not be required to set out the evidence upon which he bases his findings of fact.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Fisher, Sears & Campbell,* for appellant.—It is the duty of the court to make rulings upon demurrers and exceptions presented in the cause at a proper time, and it was error for the court to refuse to make a ruling

disposing, one way or the other, of said demurrers. Rev. Stats. 1895, art. 1291; Rules of Sup. Ct. for Dist. and Co. Ct., 24 to 28, inclusive; Knight v. Southern Pac. Ry. Co., 41 Texas, 413; Erwin v. Austin, 1 App. Civ., 1037; Williams v. Bailes, 9 Texas, 63.

Plaintiff's only action and suit to recover, based upon the facts stated in the petition, should have been for damages, and not directly for so much money "due and unpaid," and there being no claim made by plaintiff for damages, the petition is insufficient to predicate any recovery upon. Rowe v. Horton, 65 Texas, 92; Barry v. Screwmen's Ass'n, 67 Texas, 254.

The contract offered in evidence, being a purported contract between one "Fitzgerald & Ray" and one A. I. Skene, purporting to act for J. W. Thompson, and being wholly disconnected with and bearing no relevancy to the alleged contract sued upon, and not shown to have been authorized by Thompson, was wholly irrelevant and immaterial and inadmissible, and the court erred in refusing to sustain defendant's objection thereto. Wagoner v. Ruply, 69 Texas, 705; Texas & Pac. Ry. v. Brashear, 15 Texas Ct. Rep., 139; Mechem on Agency, sec. 100-1, and authorities cited; Cooper v. Sawyer, 73 S. W. Rep., 993; Terry v. French, 5 Texas Civ. App., 123; McGregor v. Hudson, 30 S. W. Rep., 489; Bartley v. Rhodes, 33 S. W. Rep., 605; Newland v. Holland, 45 Texas, 588; Coleman v. Colgate, 69 Texas, 92; Noel v. Denman, 76 Texas, 310.

No authority having been shown from Thompson to A. I. Skene, the purported agent, to make the contract in behalf of Thompson with Fitzgerald & Ray, such contract was inadmissible, incompetent and irrelevant. Baker v. Kellett, 84 S. W. Rep., 661; Cunningham v. McDonald, 83 S. W. Rep., 372.

It was wholly irrelevant and immaterial (and inadmissible) to show "who was representing Thompson, or acting for him during the construction of the tunnel," said contract for said tunnel, and the matters relating thereto, being wholly disconnected with Mr. Mills, and being wholly independent of, and at a time long subsequent to, the purported contract with Mills. Baker v. Kellet, 84 S. W. Rep., 661; Cunningham v. McDonald, 83 S. W. Rep., 372; National Cash Register Co. v. Hagan, 83 S. W. Rep., 727; McGregor v. Hudson, 30 S. W. Rep., 489; Bartley v. Rhodes, 33 S. W. Rep., 605.

It was incompetent to attempt to show that said A. I. Skene, at a period long after the alleged transaction with Mills, undertook to sell any of the dirt, such evidence being wholly irrelevant and immaterial; and evidence that Skene sold dirt was incompetent to show that Skene had authority from his alleged principal to employ a subagent to sell dirt, and bind said alleged principal for commissions to said subagent for his alleged services. Smith v. Sublett, 28 Texas, 163; Williams v. Moore, 58 S. W. Rep., 954; Tres Palacios Rice Co. v. Eidman, 15 Texas Ct. Rep., 318.

The court erred in rendering judgment for plaintiff, because there was no sufficient legal evidence showing authority on the part of A. I. Skene to dispose, at the time, of the dirt in question, to any one. Baker v. Kellett, 84 S. W. Rep., 661; Smith v. Sublett, 28 Texas, 163; Williams v. Moore, 58 S. W. Rep., 954; National Cash Register Co. v. Hagan, 83 S. W. Rep. 727; Cunningham v. McDonald, 83 S. W. Rep., 372; Noel

v. Denman, 76 Texas, 310; Tres Palacios Rice Co. v. Eidman, 15 Texas Ct. Rep., 318.

*E. P. & Otis K. Hamblen,* for appellee.

GILL, CHIEF JUSTICE.—N. L. Mills sued J. W. Thompson to recover $1,500. The pleadings predicated the right to recover upon the state of facts hereinafter disclosed. Defendant answered by general denial, and denied under oath the agency of one A. I. Skene who is alleged to have made the contract out of which this litigation has arisen. A trial to the court without a jury resulted in a judgment against Thompson for $1,365 and he has appealed.

The facts are as follows: N. L. Mills was a general broker in the city of Houston. Thompson, who resided in the city of St. Louis, secured from the city of Houston and the two railroads affected by the proposed improvement the contract to excavate the tunnel under the railroads at their intersection with Preston Avenue in the city of Houston. A. I. Skene was a man who had been in the employ of Thompson for about five years and was sent by Thompson to Houston to have the work done which he, Thompson, had contracted to do. His powers were broad and he was in fact superintendent of the entire work. One of the first questions which confronted him was the disposition of the eighteen or twenty thousand cubic yards of earth which would be taken out of the tunnel, for he must find somewhere to place it. Thereupon he went to Mills and told him to find a purchaser of the earth at the price of 7½ cents per cubic yard, promising Mills as remuneration such sum beyond that price as he, Mills, was able to procure. Mills thereupon sold the entire output to Settegast, who wanted it to fill in certain city blocks. The price which Settegast agreed to pay was 15 cents per cubic yard. Mills advised Skene of what he had done and went with Skene and Settegast to inspect the land upon which the earth was to be placed and it was satisfactory to Skene. This was about May 3, 1904. In the meantime negotiations were pending between Skene for Thompson and the firm of Fitzgerald & Ray who were proposing to take the sub-contract for the excavation at a fixed price per yard.

On the 7th of May, 1904, Skene, as agent for Thompson, signed a written contract with Fitzgerald & Ray in which the latter undertook to make the excavation, and as a part of the consideration were to have the privilege of selling the excavated earth for their own benefit. Fitzgerald & Ray thereupon promptly closed the contract with the same Settegast to take all the excavated earth. Mills at once complained by letter to Thompson, whereupon the latter not only disclaimed the authority of Skene to make such a contract, but instructed Skene to send the Fitzgerald & Ray contract to St. Louis for signature. That contract had already been signed, was the only one made by the firm for the excavation, and was the one under which the work was done by them. Thompson had also informed them that Skene was authorized to draw up and sign it. Skene had general authority to have the contract with the city and the railroads carried out and to this end had authority to employ and discharge men, and these powers he actually exercised during

the entire progress of the work. Thompson remained in St. Louis and Skene was his only representative in Texas in any way connected with the work in question. Thompson testified on the trial specifically disclaiming the authority of Skene. The latter, though in Houston at the date of the trial which occurred there, was not called as a witness by either party.

The appellant assails the judgment both on grounds of material errors of procedure and on the theory that agency was not shown on the part of Skene to bind Thompson by the contract with Mills.

The general demurrer was urged against the plaintiff's petition and the first complaint is that the trial court took the question with the case and refused to rule on it before proceeding to hear evidence. The course taken by the court could have resulted in no possible harm to appellant. Had the court overruled the demurrer when first presented, as was in fact ultimately done, the evidence would have been heard and the result would have been the same. Though we do not commend the practice the point made is without merit in the way it arises here.

Appellant further contends that the general demurrer should have been sustained, on the theory that upon the facts stated by the plaintiff in his pleadings he was entitled to damages for breach of contract, whereas he prayed for a sum of money due and unpaid. The proposition furnishes its own answer for it is well settled that a clear statement of the facts upon which liability is predicated followed by a general prayer for relief will, if the facts show a cause of action, be good as against a general demurrer even if the suit be brought upon a wrong theory. The demurrer was properly overruled.

The plaintiff having no direct evidence of Skene's authority to bind Thompson in the respect asserted, undertook to establish his allegations by circumstances. Following this plan he offered in evidence the contract between Thompson and the firm of Fitzgerald & Ray, signed by Skene for Thompson, and under which the excavation was largely made, and the subsequent conduct of the parties thereunder. To the introduction of this evidence many objections were made and these are embodied in assignments numbered three to seven in appellant's brief.

The first objection was to proof that it was signed by Skene purporting to act for Thompson, because Skene's authority to make that contract was not shown. The effective reply to this is that Skene's authority in that respect is shown not only by the fact that the work was actually done and paid for under the contract signed by him; but by positive declarations of Thompson that he had authority to execute it.

The second is, that the Fitzgerald-Ray contract was signed on the 7th of May, whereas the contract with Mills was made out May 1 and therefore the authority of Skene to act for Thompson on the 7th does not tend to show that he had authority to contract with reference to the tunnel on the 1st. To this it occurs to us there are two answers: First. It generally appears that Skene came to Houston in the general service of Thompson with reference to the tunnel and under that general authority was acting and negotiating at the time of the Mills incident, so that whatever occurred then or thereafter, approved of or authorized by Thompson and which tended to show the nature and extent of that general authority, was admissible as a circumstance in support of the

issue. Second. The acts were practically contemporaneous, the negotiations for each pending at the same time.

By the eighth assignment appellant complains of the answer of the witness Fitzgerald to the effect that after that firm had a difference with Thompson and ceased work that Skene took charge and disposed of the remainder of the excavated earth, the objection being that it occurred some time after the date of the contract sued on. We think the answer was admissible for the reason given first above.

When Fitzgerald & Ray quit work they sued Thompson for a balance claimed to be due. Thompson testified in that case and stated among other things that Skene was the "general superintendent of the work from beginning to end" and "had full charge of all work, hiring and discharging men and paying off men and superintending all work at all times" and that Skene had "full authority." Fitzgerald was permitted to testify to this over objection of appellant, the ground of objection being that the answer was not addressed to the date of the Mills contract. We think it was clearly admissible as a broad admission on the part of Thompson of the general powers of Skene with reference to the work in question, and tended legitimately and strongly to show that if the disposition of the excavated earth was a part of the work which he might have performed at Thompson's expense, it came within such authority as Thompson had conferred.

The remaining assignments, with one exception, question the sufficiency of the evidence to show authority in Skene to make the contract sued on. To our minds the facts plainly show that under Skene's general authority to employ hands to have the work performed he had the authority either to dispose of the earth or employ another to dispose of it for him. The earth in question was unlike a piece of ordinary property owned and held by defendant and which he had employed a broker to sell. It is apparent that the earth as a source of profit was of little or no moment, and except for the trouble of its disposition was a mere incident to the main task of building the tunnel. If it be true that Thompson had authorized Skene to go to Houston and have the tunnel built, and this is clearly made to appear, then it seems to us Skene's employment of Mills was as clearly within that broad power as the contract with Fitzgerald & Ray.

It can scarcely be questioned that he might have advertised for bids for the contract work and paid the price of advertising. He might have advertised the excavated earth for sale, paid the cost of advertising and thus procured a purchaser. Manifestly he might have put a price on the earth, which he did. It was never contemplated that Skene should do the work himself. His employment contemplated that he should employ others. It is equally clear that he was bound to Settegast by the Mills contract and he evidently so regarded it for after eliminating Mills, Settegast got the earth. What then is the difference between hiring Mills at so many dollars to find a place to dump the excavated earth and a purchaser who would take it at a fixed price and hiring him to do the same task for a sum equal to all he could procure over a certain price? His power to hire and pay and discharge included, in our judgment, the power to make the contract which, according to the undisputed proof, he made with Mills and which Mills performed by

finding a place for the dirt and a purchaser who was not only willing to take it but actually took it thereafter. It did not, in our judgment, devolve on the plaintiff to prove a special authority in Skene to make the sale. The burden was discharged when he showed that it fairly came within his general authority.

The remaining assignment is addressed to the refusal of the trial court to set out the evidence upon which he predicated his fact finding that Skene had the authority alleged. It is no longer an open question that a trial court can not be required to find the evidence upon which his fact findings are based.

We are of opinion the record supports the judgment and that no error has been committed. The judgment is affirmed.

*Affirmed.*

Writ of error refused.