## ANDERS v. JOHNSON. (No. 2932.)*

(Court of Civil Appeals of Texas. Texarkana.
Jan. 21, 1926. Rehearing Denied
Feb. 11, 1926.)

1. Frauds, statute of ⬤➞125(3)—Statute does not make void for all purposes, but only unenforceable through judicial proceeding, contract to convey interest in land having insufficient written memorandum (Rev. St. 1911, art. 3965).

Rev. St. 1911, art. 3965, does not make void for all purposes, but only unenforceable through judicial proceedings, contract to convey interest in land having insufficient written memorandum.

2. Frauds, statute of ⬤➞125(1)—Subject-matter of contract to transfer oil leases of certain value on certain number of acres within certain territory held not so uncertain as to render contract a nullity.

Though contract to transfer oil leases of stated value on certain number of acres within certain territory, thus giving liberty of selection to promisor, does not sufficiently describe land to satisfy statute, its subject-matter is not so uncertain as to render the contract a nullity.

3. Evidence ⬤➞16.

"Lease," within contract to transfer oil leases, has a legal significance of which courts will take judicial notice.

4. Limitation of actions ⬤➞46(6)—Limitation against action on parol contract to pay a certain sum in settlement of action held not to commence to run till repudiation, as insufficient under statute of frauds, of contract to transfer oil leases in satisfaction of the claim.

Written contract of A. to transfer to J. oil leases of certain value on lands within certain territory, being performable by A., though unenforceable through the courts because of the statute of frauds, limitations did not begin to run against action on A.'s parol contract to pay J. a certain sum, in satisfaction of which the written contract was given, till A. did some act legally sufficient to indicate that he repudiated his written contract to transfer leases, which was not done till he answered in the action on the written contract.

5. Limitation of actions ⬤➞123—Petition sufficiently stating essential facts for recovery on parol contract, and concluding with prayer for general relief, held to arrest the statute, though pleader had in mind recovery on insufficient writing.

Petition sufficiently stating essential facts for recovery on parol contract to pay money, and concluding with prayer for general as well as special relief, arrests running of statute against such cause of action, in view of the court's duty to grant such relief as the facts state and warrant, though pleader had in mind as his principal object recovery on written contract, insufficient under statute of frauds, to satisfy the obligation by transfer of oil leases of stated value.

6. Limitation of actions ⬤➞123—Supplemental petition, improperly setting up cause of action, but not objected to on that ground, held to arrest running of statute.

Though supplemental petition is not proper pleading in which to set up cause of action, yet it doing so, and not being objected to on that ground, and not being eliminated for any purpose by the court, but remaining till superseded by an amended original pleaded, it arrested the running of the statute.

Appeal from District Court, Hunt County; Geo. B. Hall, Judge.

On remand from the Supreme Court, after reversal on the issue of the statute of frauds (276 S. W. 678), for a determination of the issue of limitations. Affirmed.

Neyland & Neyland and T. W. Thompson, all of Greenville, for appellant.

Clark & Sweeton, of Greenville, for appellee.

HODGES, J. This case was before this court at a former term, when the judgment of the trial court was affirmed. A report in which the material facts are stated will be found in 263 S. W. 946, as well as in the opinion of the Commission of Appeals, Anders v. Johnson, 276 S. W. 678, not yet [officially] reported.

The plaintiff's amended original petition, on which the case was finally disposed of in the trial court, contained two counts; one declaring upon the written contract, and the other pleading a parol agreement upon which the writing was founded. The following is a copy of the written contract:

"In the District Court of Hunt County, Texas,
May Term, 1920.

"J. W. Johnson v. Red Chief Mining Company et al. No. 12636.

"This day comes the parties, J. W. Johnson, plaintiff, and C. L. Anders and W. R. Taylor, defendants, and entered the following agreement in full settlement of the matters in controversy in said suit.

"(1) The defendant C. L. Anders has paid to the plaintiff the sum of $1,288, plus the sum of $58, being the amount paid by said Johnson for depositions taken in the case, and said Johnson hereby acknowledges receipt of said sums of money.

"(2) Said Anders agrees to transfer an oil lease covering 40 acres of land located within one mile of the J. W. Howse well in Ouachita county, Ark., valued at $1,000, said transfer to be made in accordance with the terms of this instrument within three weeks from this date.

"(3) Said Anders also agrees to transfer an oil lease covering 40 acres of land in Choctaw county, Okl., located within one mile of a well to be drilled by C. L. Anders or his associates, within six months from this date. C. L. Anders guarantees to sell this 40-acre lease for the account of said Johnson or any one he may name, before the completion of said well, for the sum of $1,000. In case said Anders offers the

$1,000, and his offer is refused within five days after it is made, he shall be released from this obligation to sell. The transfer herein mentioned is to be made in accordance with the terms of this instrument and whenever said well is located, at all events, to be within six months from this date. This lease is valued at $1,000.

"(4) Said Anders is to transfer an oil lease covering 80 acres of land located in Choctaw county, Okl., and to be within one and a half miles of the well mentioned in paragraph 3 of this contract; and it is understood that said Johnson, or any one acting for or under him, may have the privilege of taking this 80 acres in two different tracts of 40 acres each, and on different sides of the well. This lease is valued at $1,000, and the transfer is to be made within the time and in accordance with the provisions of section 3 of this contract.

"(5) Said Anders agrees to transfer an oil lease covering 40 acres of land located in section 5, township 20, range 5, Claiborne parish, La., and to be in the northeast part of said section. This lease is to be transferred within three days from this date, and is of the value of $1,000.

"(6) Said Anders agrees to transfer an oil lease covering 40 acres of land located in section 12, township 20, range 6, Claiborne parish, La., and to be located in the northwest part of said section. This lease is valued at $1,000, and is to be transferred within three days from this date.

"(7) C. L. Anders also agrees to deliver a lease covering 40 acres of land to be located within one mile of some 'drilling well'; this lease to be transferred within one year from this date.

"(8) It is understood and agreed that each of said leases to be so transferred under the terms of this instrument is to be a valid lease in approved form for oil leases, and is to ·convey a good and sufficient title, and is to be accompanied by an opinion of some reputable lawyer to the effect that the lease is valid and the title is good. Each of said leases is to be transferred to Dr. H. F. Vaughan of Wolfe City, Tex., who is to hold the title thereto in his name.

"(9) In the event said Anders shall fail to transfer either of said leases within the time and in accordance with the conditions specified in this contract, then he is to pay to the said Johnson, at Greenville, Tex., a sum equal to double the value of said lease as specified herein, said sum to be immediately due and payable upon the failure of said Anders to make the transfer in accordance with this instrument within the time mentioned; it being understood that time is the essence of the contract in this respect.

"(10) It is further understood that the Louisana lease is a community lease, which requires the sinking of a well every six months to protect the lease, and the said Anders agrees to do and perform all things necessary to keep said lease, including the lease herein transferred, valid and live; and, in case he fails to do so, he is to pay to the plaintiff the damages he sustains. The Arkansas lease carries an annual rental of 15 cents an acre. The Oklahoma lease carries an annual rental of 25 cents an acre.

"(11) Said Anders guarantees the existence of the facts stated herein."

In the trial below the defendant pleaded the statute of frauds against the count on the written contract, and limitation against the count on the parol agreement. This court held, on appeal, that the written contract was valid and enforceable, and upon that ground alone affirmed the judgment of the trial court. The defense of limitation was not then discussed or passed upon. Subsequently, upon the application of the appellant, Anders, a writ of error was granted by the Supreme Court, and the judgment holding that the written contract was valid and enforceable was reversed (276 S. W. 678), and the case has been remanded to this court for a determination of the issue of limitation.

In the opinion of the Commission of Appeals, which was approved by the Supreme Court, it was held that the contract by which Anders bound himself to transfer to Johnson a number of oil leases was one which the statute required to be in writing; and, because the writing did not describe the land upon which the leases were to be located, and did not specify the terms and conditions of the leases to be transferred, the contract was not enforceable. • The conflict between the judgment of this court and that of the Commission of Appeals does not result from differing views regarding the requisites of a contract to convey an interest in real estate, or as to whether mineral leases constitute an interest in real estate, but from differing constructions of this particular contract and of the nature and purpose of the plaintiff's suits. We construed this contract as one to pay a pre-existing debt in property, which upon default became a demand payable in money. The Commission of Appeals treated the contract as one to convey an interest in realty, and the suit as one to recover damages for the failure to make the conveyance.

As supporting the conclusions announced, the court referred to Cantrell v. Garrard (Tex. Com. App.) 240 S. W. 533, and Gatewood v. Graves (Tex. Civ. App.) 241 S. W. 264. In each of those cases the contract was expressly one of sale and purchase and was wholly executory; the consideration for the conveyance was to be paid in the future. In this case the conceded facts show that the parties had settled a former lawsuit; that in the settlement Anders admitted an indebtedness to Johnson and those whom Johnson represented in the sum of $6,440. It was agreed that $1,288 of that amount should be paid in cash, and the remainder, $5,152, by the transfer of the oil leases specified in the written contract. The only legitimate inference to be drawn from a history of the transaction is that the transfer of the leases was to be made by Anders and accepted by Johnson for the accommodation of Anders, and to enable Anders to discharge a debt in that species of property instead of in money. While the language of the writing does not make that purpose entirely clear, it is made

plain by the admitted facts, and there is nothing in the writing inconsistent with such a purpose. When reduced to its legal substance, the contract was merely one by which Anders obligated himself to do something—to transfer leases. No consideration was expressed for that promise. It was therefore permissible to show what that consideration was, and that it was a pre-existing debt. It was also permissible to prove by extraneous evidence the circumstances attending the transaction, and the conditions under which the contract was made, in order to ascertain the real purpose and intent of the parties, when such intent and purpose was not made plain by the writing itself. Walker v. McDonald et al., 49 Tex. 458; Brick v. Brick, 98 U. S. 514, 25 L. Ed. 256; A., T. & O. Ry. Co. v. Carolina National Bank, 19 Wall. (86 U. S.) 548, 22 L. Ed. 196; Cabrera v. American Colonial Bank, 214 U. S. 224, 29 S. Ct. 623, 53 L. Ed. 374; Roberts v. Beatty, 2 Pen. & W. (Pa.) 63, 21 Am. Dec. 410; 2 Elliott on Contracts, § 1641.

If this be only a contract to pay a pre-existing debt in property, and that fact may be shown by extraneous evidence, then the statute of frauds has no application. The writing is sufficiently definite to be enforceable as a money demand upon the failure of the promisor to perform his contract at maturity. Goldsborough v. Orr, 8 Wheat. 218, 5 L. Ed. 600; Fleming v. Nall, 1 Tex. 246; Chevallier v. Buford, 1 Tex. 504; Ward v. Latimer & Bagby et al., 2 Tex. 245; Baker v. Todd, 6 Tex. 274, 55 Am. Dec. 775; Durst v. Swift, 11 Tex. 273; Oriental Hotel Co. v. Griffis, 88 Tex. 574, 33 S. W. 652, 30 L. R. A. 765, 53 Am. St. Rep. 790; Smith v. Coolidge, 68 Vt. 516, 35 A. 432, 54 Am. St. Rep. 902; Roberts v. Beatty, 2 Pen. & W. (Pa.) 63, 21 Am. Dec. 410; Thomas v. Roosa, 7 Johns. (N. Y.) 461; 21 R. C. L. pp. 53, 54, § 51; Corbett v. Sayers, 29 Tex. Civ. App. 68, 69 S. W. 108; Miller v. Roberts, 18 Tex. 16, 67 Am. Dec. 688.

If A owes B $1,000, there is no rule of law which prevents A and B from contracting that A shall pay the debt in property of a certain kind, leaving A a limited right of selection. In Durst v. Swift, supra, the contract recited that:

"In consideration of the sum of $16,500, the obligor, defendant in this suit, sold to the obligee 5½ leagues of land 'located and being in the counties of San Augustine, Nacogdoches, Rusk, Houston, and the southern half of Robertson.' It stipulated that 'there shall be included his own headright certificate for a league and labor of land,' which 'shall be located in the southern part of the aforesaid county of Robertson, and near the Trinity river.' [This was the only description.] It is further recited that he 'is not prepared, at this time,' to make good and sufficient titles; whereupon it is agreed that six months shall be allowed him for that purpose; and he obliges himself 'to convey and deliver to said Jones, in the city of Galveston, his heirs and assigns, good and sufficient titles and warranty deeds, with patents, to the aforesaid 5½ leagues of land, free of any charge whatsoever, other than the consideration above named.' And, 'in case he fails to comply with the conditions of the above obligation, he hereby binds himself, his heirs, executors.'" etc., "'well and truly to pay the said Samuel Jones, his heirs,'" etc., "'the just and full sum of $16,500, current money of the United States, with interest from the date hereof; and for which he hereby promises to confess judgment in any court of competent jurisdiction or authority.'"

Upon default by the obligor, suit was brought by Swift in the district court of Galveston county. The defendant filed a plea of privilege, claiming the right to be sued in Leon county, where he resided. It was claimed that the contract, when properly construed, was only a personal obligation for the payment of money, and for that reason the defendant had a right to be sued in the county of his residence. The plaintiff resisted the plea upon the ground that the contract was one to convey land in Galveston county. The Supreme Court sustained that view, and held that the suit was properly brought in Galveston county because of the contract to make the conveyance of the title in the city of Galveston.

In Oriental Hotel Co. v. Griffis the contract contained a clause by which the owner agreed to pay the contractor in a certain amount of the stock of the hotel company. The Court of Civil Appeals held that when the debt became due, and upon the failure of the owner to pay in stock when demanded, the entire debt became a demand for money. While that case was reversed by the Supreme Court, that ruling of the Court of Civil Appeals was not disturbed.

In Corbett v. Sayers, the contract was to pay for certain lots in cattle. The court said:

"We think the case presented by the pleadings and evidence is analogous to that of a note payable in property. If the maker of such a note fails to deliver the specific property on or before the maturity of the note, it becomes a money demand."

In Thomas v. Roosa, an old New York case, the note sued on was a promise to pay the plaintiff in a good horse, to be worth, with saddle and bridle, $80, and in goods out of the store amounting to $20. The contract was held to be a valid money demand upon default of payment in the property at maturity

In Roberts v. Beatty, the suit was based upon the following contracts:

"On the 1st day of October next, due A. B. Roberts two bureaus at Carnahan's shop in Butler.

"May 31, 1826.    [Signed] Wm. Beatty."

"On the 1st of January, due Abner B. Roberts, two bureaus at Carnahan's shop in Butler, and one dough chest.

"May 31, 1826.    [Signed] Wm. Beatty."

These were held to be valid demands, payable in money upon default at maturity. In the course of the opinion the court said:

"In expounding an agreement, we must consider the subject-matter; the object of making it; the sense in which the parties mutually understood it at the time it was made; the place where it was entered into; the use to which any articles stipulated to be delivered were to be applied; if materials for building, when and where to be used; and, finally, the practical exposition and the general understanding, custom, and usage amongst those who enter into similar contracts, in the execution and performance thereof. The construction must be reasonable; and the intention of the parties, if it can be collected from the instrument, and an attentive consideration of the circumstances always adverted to, with such others as may be incident to the nature and character of the particular contract, must control every other construction inconsistent with it. unless repugnant with some settled principle of law"—(citing Chitty on Contracts, 19; Barrett v. Pritchard, 2 Pick. [Mass.] 515, 13 Am. Dec. 449; Demi v. Bossler, 1 Pen. & W. [Pa.] 224).

Again the court said:

"There is a well-settled distinction between executory and executed contracts. The former convey a chose, in action; the latter a chose in possession [citing cases]. In this case the consideration was executed. It had been received by the defendant in advance. * * * On the part of the plaintiff, nothing further was required to be done, in order to entitle him to claim a performance of the contract by the defendant. The day and place being fixed by the agreement, it was the duty of the defendant to have tendered the articles, on the day stipulated, or to have been ready at the place, prepared to do so. The rule laid down in the cases of Paradise v. Jane, Alleyn, 27, * * * it is said, has been often recognized in courts of law, as a sound one; i. e., 'that, when the party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract.'"

For the same reason, it would appear that, if a party makes a contract which is performable and for which he has received a consideration, the law imposes upon him the duty of doing that which he can do and which he has agreed to do. Continuing, it was said:

"All agreements to pay in specific articles are presumed to be made in favor of the debtor; and he may, in all cases, pay the amount of the debt in money, in lieu of the articles which, by the terms of the contract, the creditor had agreed to receive. And, if he tenders the articles on the day fixed by the agreement, he may plead it and continue his right to pay the property instead of the money."

After reviewing a number of cases supporting that view, the court continued:

"But the payer did not deliver the property on the day, and at the place, stipulated in his duebill: nor was he then ready and prepared to deliver the same. He therefore lost his right of election to pay in the money, or the property, and became liable to pay the amount of the consideration in money."

Following the report of the above case in the American Decisions is a copious note containing many cases in which similar rulings are made.

In the contract here under consideration, each of the five leases was valued at $1,000. The value of the sixth lease was not mentioned. The leases were to be transferred at different times. As to some of them the contract might have been performed, and default made as to the others. The debt amounted to a little more than $5,000. In placing a valuation upon each of the five of the leases, the parties evidently intended to fix an amount which should be credited on the contract in case of partial performance only, and to fix the amount of actual damages sustained by a failure to perform any part of the contract. The language used was tantamount to a stipulation binding Anders to transfer leases, of the value specified. If he failed to make those transfers, the agreed value of the leases fixed the actual damages he should be compelled to pay in money. Stevens' Ex'rs v. Lee, 70 Tex. 279, 8 S. W. 40; Durst v. Swift, supra.

[1] But, since the Supreme Court, in approving the judgment of the Commission of Appeals, has determined that the written contract involved in this suit was one to convey an interest in realty and is unenforceable, the issue of limitation must be decided by this court upon the basis of the parol agreement. Although the written contract may be unenforceable because it failed to describe the land upon which the leases were to be located, it was not for that reason void for all purposes. Article 3965, Revised Civil Statutes of 1911, provides:

"No action shall be brought in any of the courts in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized. * * * (4) Upon any contract for the sale of real estate or the lease thereof for a longer term than one year."

It will be observed that the statute does not say that contracts to convey real estate which are not in writing shall be void. They are merely made unenforceable through judicial proceedings in the courts of the country. That is the construction placed on the statute forbidding suits by foreign corporations doing business in Texas without a permit. Smythe Co. v. Fort Worth Sand & Gravel Co., 105 Tex. 8, 142 S. W. 1157. There is nothing unlawful or immoral in a defective written contract to convey real estate. For

that reason it has frequently been held that the defense of the statute of frauds may be waived when the suit is founded upon a contract not in compliance with the requirements of that statute. G., C. & S. F. Ry. Co. v. Settegast et al. (Tex. Civ. App.) 150 S. W. 228; Crutchfield v. Donathan, 49 Tex. 696, 30 Am. Rep. 112; League v. Davis, 53 Tex. 14; Lee v. Stowe et al., 57 Tex. 452; Erhard v. Calahan, 33 Tex. 171; International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 99; King v. Murray (Tex. Civ. App.) 135 S. W. 257; Render v. Lillard, 61 Okl. 206, 160 P. 705, L. R. A. 1917B, 1061, and notes.

[2, 3] In this case Anders had received the value of the leases and promised to make the transfers at different times, the latest being one year from the date of the contract. This contract was performable by Anders. It is true the leases were not described with such detail as was required to show the identity of the particular tracts of land upon which they were to be located, but the language used presupposes that Anders then owned or had in his control valid leases of some kind covering the general territory described in the contract. Anders did not obligate himself to execute leases, or to procure the execution of leases by others, but was to transfer leases, presumably then in existence. Johnson had a right to allow Anders a liberty of selection if he wished to do so. If that be correct, the subject-matter of the promise was not so uncertain as to render the contract a nullity. It is also true that there are many different kinds of mineral leases; but the term "lease," when thus used, has a legal significance of which the courts will take judicial notice. Such a "lease" is more than a license to go upon the land of another and explore for minerals, and is less than unconditional conveyance of the minerals in the soil. A "lease" is generally understood to be a contract conferring upon the grantee, commonly called the lessee, an interest in the realty, carrying with it a right to go upon the premises of the grantor and explore for minerals. It covers a term of years, and is based upon a consideration of a nominal or substantial cash payment, coupled with an agreement to develop the territory leased, and providing for the payment of a rental at stated intervals or a royalty in the event minerals are found in paying quantities. It would be unreasonable in this instance to hold that Anders could not have discharged his obligation by delivering contracts worth $1,000 each, which came within the general description of mineral leases and covering any of the territory described in the writing. The failure to be more specific as to the identity of the land authorized Anders to select leases upon any of the lands mentioned in the contract; and the failure to designate all the terms of the

leases conferred upon him the right to select from those he held or controlled such as came within the general description of leases and which equalled the value that the parties had agreed upon. The contract would not have been more definite had it provided expressly that Anders was to transfer six leases, then held by him covering any of the land described in the contract, and expressly giving him the right to select, within the limits mentioned in the contract, the particular leases he should deliver. Such a right of selection will be implied when the promisor may pay in property of a certain general character—such as cattle, or lumber, or land, or goods—without identifying the specific articles which shall constitute the medium of payment. In actions to enforce contracts, the courts should lend their aid to carrying out the real intent of the parties, and in giving merited relief, in so far as that may be done, without disregarding established rules of law whose violation would lead to greater injustice. Where the contract is capable of two constructions, that construction should be adopted which holds a defaulter to the performance of his promise, and not the one which allows him a loophole through which to escape liability.

[4] If upon any reasonable construction of this contract it was performable by Anders then, even though unenforceable through the courts, limitation did not begin to run against the action on the parol agreement till Anders did some act which was legally sufficient to indicate that he repudiated his written agreement to transfer the leases. Taylor v. Rowland, 26 Tex. 293. This had not been done up to the time the suit was filed on April 15, 1921. On May 17 following, Anders filed his original answer, which consisted only of a general demurrer and a general denial. Assuming that this pleading was a repudiation of his contract by Anders, and sufficient to put in operation the statute of limitations against the enforcement of the parol agreement, still the plaintiff's cause of action upon that parol agreement was not barred at the time he filed his amended original petition. That amended pleading was filed on March 9, 1923, less than two years from the date upon which Anders filed his original answer, the earliest date when limitation would begin to run. It is not denied that this amended original petition contains all the essential averments required to set up a cause of action upon the parol agreement. Upon that view of the law the action on the parol agreement was not barred at the time the amended original petition was filed.

[5] But, even if that conclusion be incorrect, there is still another ground upon which we think the plea of limitation should be denied. The parol agreement to pay the debt was made at the time the lawsuit was settled, on the 22d day of June, 1920. It was

then that the amount of the debt due from Anders to Johnson and his associates was agreed upon. On the 17th day of May, 1922, less than two years from that date, the plaintiff filed a supplemental petition in reply to the plea of the defendant setting up the statute of frauds. The material portions of that petition are as follows:

"Specially answering the facts alleged in the special answer of the defendant, plaintiff shows to the court that, at the time the contract sued on was executed by the defendant, plaintiff had another suit pending against the defendant and one W. R. Taylor to recover a sum amounting at that time, to $6,440; that the money constituting said sum had been procured from the plaintiff and from some 45 or more other people residing near Wolfe City, Tex., by the defendant, Anders, through false and fraudulent representations concerning certain mining stock in the Red Chief Mining Company, a corporation; that the claims of each and all of said parties growing out of said transactions had been transferred to the plaintiff; that said suit had been brought thereon; that the depositions in Arizona, where said alleged mining property was located, had been taken, and that the depositions of some 45 or more persons from whom the defendant, Anders, had acquired the money making up the sum above mentioned, had been taken, and that said suit was substantially ready for trial; that said depositions established the facts necessary to be proved in order to sustain a recovery by the plaintiff; that, for a long time prior to the execution of said contract said Anders had been trying to arrive at a settlement of said suit; that it was finally agreed between the plaintiff and the defendant in this case that said suit might be settled upon the basis of the payment by said Anders of the sum of 20 per cent. of the amount of money above mentioned and involved in said suit, same being $1,288 in cash; and that the balance of said $6,440 might be paid in five oil leases which Anders claimed to own in the states of Oklahoma, Arkansas, and Louisiana. Answering that part of defendant's special answer in which he pleads the statutes of fraud, plaintiff shows to the court that each and all of said leases in the states of Oklahoma, Arkansas, and Louisiana mentioned in said contract, were valued by contract of the parties at $1,000 at the time the contract was made, and that the suit above mentioned was settled by said contract on a basis of $6,440 to be paid by the defendant to the plaintiff; that it was understood and agreed that in the event said leases were transferred as provided in said contract, they would be accepted by the plaintiff at $1,000 each; that the defendant has in fact received the benefit in said settlement and under said contract of the said sum of $1,000 represented by each of said leases, and that, if it should be held that said contract is within the statute of frauds, then plaintiff is entitled to recover the sum of $1,000 for each of said leases, aggregating the sum of $5,000, together with 6 per cent. interest thereon from the date of said contract. Wherefore plaintiff prays for the recovery of said sum of money, for legal interest thereon from the date same was to be paid under said contract, for costs of suit, and general and special relief."

While it may be true, as claimed by appellant, that the pleader here had in mind as his principal object a recovery upon the writing itself, yet the language employed is broad and explicit enough to enable the court to enforce the original parol contract. The essential facts are sufficiently stated, and the petition concludes with a prayer for general relief. Under such conditions it is the duty of the court to grant such relief as the facts stated warrant, regardless of the special prayer of the pleader. Dodgen v. McCrea (Tex. Civ. App.) 225 S. W. 71; Thompson v. Mills, 45 Tex. Civ. App. 642, 101 S. W. 560; Lee v. Boutwell, 44 Tex. 151.

[6] It is true a supplemental petition is not the proper pleading in which to set up a cause of action; but in this instance there was no objection to the supplemental petition upon that ground, and the pleading was not eliminated for any purpose by the court. It remained until superseded by another amended original pleading. Even a pleading fundamentally defective is sufficient to arrest limitation. Smith v. Tipps (Tex. Civ. App.) 171 S. W. 816, 191 S. W. 392; Id. (Tex. Com. App.) 229 S. W. 307; Clegg v. Lumber Co. (Tex. Civ. App.) 161 S. W. 944, and cases cited. Hence we conclude that the appellee's suit was not barred by the statute of limitations.

The judgment should be affirmed.