## PARK v. SULLIVAN. (No. 695.)

Court of Civil Appeals of Texas. Waco.
Nov. 22, 1928.

Rehearing Denied Jan. 3, 1929.

L. W. Shepperd and J. E. Bradley, both of Groesbeck, and N. T. Stubbs, of Mexia, for appellant.

Frank C. Bolton, of Mexia, and A. B. Geppert, of Teague, for appellee.

STANFORD, J. Suit was filed by appellee, G. T. Sullivan, against appellant, P. S. Park,

and J. H. Park, and John Lane, to recover damages against all three of said parties for breach of a lease contract executed by P. S. Park by his agent, J. H. Park, to appellee, G. T. Sullivan, by the terms of which what was then known as the Henson Hotel, with all the furnishings therein contained, was leased to appellee for $60 per month, from December 1, 1924, to December 1, 1925. At the time said lease was executed, November 20, 1924, John Lane was occupying said hotel under a lease which did not expire until April 6, 1925, but appellee contended that at the time the lease was given to him November 20, 1924, P. S. Park, by J. H. Park, agent, agreed to give him possession December 1, 1924, and the said Lane agreed to vacate and give him possession on said date. Lane contended he agreed to give appellee possession December 1, 1924, if he (Lane) could get another place to move into. Appellant's principal defense was that J. H. Park, his brother, had no authority to execute said lease as his agent.

In response to special issues, the jury found:

(1) That at the time of the execution of the lease and contract to plaintiff by J. H. Park, J. H. Park did have actual authority from his brother, P. S. Park, as agent, to rent or lease said property.

(2) That J. H. Park did unconditionally contract and agree with plaintiff to lease him the premises, hotel, and fixtures for the time and under the terms expressed in the written contract in evidence, free from the contingency of Lane's agreement to give possession of the premises on December 1, 1924.

(3) That the defendant Lane did unconditionally promise and agree to deliver possession of the hotel and property in question to plaintiff on December 1, 1924, free from any contingency of his securing another place by that time.

(4) That the value of the lease or rental contract upon the hotel and fixtures in question covering the period from December 1, 1924, to December 1, 1925, was $4,000.

The court found that appellee agreed to pay $720 for said lease for one year from December 1, 1924, to December 1, 1925, and that he had paid $60, leaving a balance of $660 rent unpaid, which amount the court deducted from said $4,000, leaving $3,340, for which amount the court entered judgment in favor of appellee Sullivan against P. S. Park and G. H. (John) Lane, jointly and severally, and decreed that appellee take nothing as to J. H. Park. P. S. Park alone has appealed, and presents the record here for review, complaining only of the judgment of appellee against him. This is the second appeal in this case, the former being reported in 286 S. W. 541.

That J. H. Park, on November 20, 1924, as the purported agent of P. S. Park, did execute a lease to appellee, giving appellee the right to occupy the Henson Hotel property from December 1, 1924, to December 1, 1925, for $60 per month, is not controverted. That said contract was breached is not disputed. That appellee sustained damages to the amount of $3,340 is not questioned. As we view the case, the principal question involved is the sufficiency of the evidence to support the finding of the jury to the effect that J. H. Park did have the authority to execute said lease. Appellee alleged, in substance, that J. H. Park was in full control of said hotel property as agent for P. S. Park, with authority to lease same; that on November 20, 1924, he leased said property from P. S. Park under the following lease contract—copying same in full. The lease is signed: "P. S. Park, per J. H. Park, Agt. and Atty." Appellee alleged further that P. S. Park, by his agent, J. H. Park, agreed appellee should have possession on December 1, 1924; that John Lane was in possession at the time said lease was executed November 20, 1924, but that the said P. S. Park, by his agent, J. H. Park, and also John Lane, agreed the said Lane would vacate said property by December 1, 1924, but that on December 1, 1924, the said Lane informed appellee that he would not surrender possession of said property, and that P. S. Park, by his said agent, refused to take any steps to assist appellee to secure possession, but, on the contrary, informed appellee that John Lane would continue to keep said premises, that he would see that appellee did not get possession, for the reason that oil had been discovered at Wortham and that the lease had become very valuable. Appellee alleged further, in effect, that after oil was discovered at Wortham and a lease on said property became very valuable, the said J. H. Park, individually and as agent for P. S. Park, entered into a conspiracy with Lane to keep John Lane in possession of said property, and all of said parties divide the revenues derived from said property during said oil boom, etc., and that if P. S. Park did not enter into said conspiracy, he afterwards ratified same, and did assist in keeping Lane in possession, and accepted rent from him, etc., and the division of profits from the operation of said hotel by defendant Lane was fully carried out, etc.

The record discloses that J. H. Park and P. S. Park were brothers; that J. H. Park lived at Mexia and was engaged in the insurance and notary business, and P. S. Park, the owner of the hotel situated in Mexia, lived in Bryan, Tex.; that prior to the execution of the lease in question, J. H. Park had been looking after the hotel for his brother, collecting rents, etc.; that the lease on said hotel to Lane dated April 1, 1924, and expiring on April 1, 1925, was signed, "P. S. Park, by J. H. Park, Agt. & Atty." It is true both J. H. and P. S. Park testified that J. H. Park talked to his brother over the phone before executing the Lane lease. It seems

the negotiations resulting in the execution of the lease to appellee continued over three days, November 18th, 19th, and 20th. The jury could well conclude that he talked over the phone to his brother before executing the lease to appellee, or, at least, that J. H. Park had good reasons to believe he had such authority, else he would have done so. The lease executed by J. H. Park as agent and attorney for P. S. Park, to appellee, was dated November 20, 1924, and runs from December 1, 1924, to December 1, 1925. This lease authorized appellee "to clean up said place at his own expense, to paint and paper such room or rooms, lobby and signs as may suit his mind or convenience, also at his own expense." On November 22, 1924, appellee employed a painter and began, with the permission of Lane, who was then in possession, to clean up and repaint, and did repaint the inside woodwork in the lobby, and some 16 rooms in said hotel, and finished same on Saturday night before December 1, 1924. Also, at the suggestion of J. H. Park, appellee changed the name of said hotel from the Henson Hotel to The Oil City Hotel, and had a sign painted and put up evidencing such change. The jury could well conclude that P. S. Park must have heard or been apprised of the improvements being made in his hotel by appellee, changing the name, etc., extending over a period of some 10 days.

Appellee testified: "I asked him (Lane) if he would guarantee me the possession of the place December 1st, 1924, and he said he absolutely would and would be glad to get out of it, and he said the roof had been leaking in a dozen places, and that business was poor and that he hadn't paid any rent for four or five months, and furthermore that he didn't intend to pay any more while business was poor and the roof was leaking, and he said he was willing to give possession at any time between then and December 1st, and if I wanted to rent it, to go right ahead. * * * I remember the day the oil well came in at Wortham, it was Thanksgiving Day, November 27th, I saw Mr. Lane after the oil well came in and there was a change in his conduct toward me, it wasn't near as warm as it was before." On December 1, 1924, appellee tried to take possession, but Lane refused to permit him to do so. He then filed suit for possession and sequestrated the property, and went to J. H. Park; appellee testifying: "I told him we had some papers prepared to put Lane out, and we wanted him and his brother, P. S. Park, to join us, and Mr. Park said, 'No, I won't do nothing about putting Jack Lane out of that place,' and he said: 'Since I have entered into that contract with you, that place is worth a thousand dollars a month, and I won't do nothing toward putting him out, and if you go to putting him out, I will see that he stays there.'"

Appellee did sue and sequestrate said property, but Lane replevied same by giving a replevy bond, which was signed as sureties by "J. H. Park" and "P. S. Park, by J. H. Park." At the time the lease to appellee was signed, "P. S. Park, by J. H. Park, Agt. and Atty.," November 20, 1924, appellee gave J. H. Park his check on a bank at Wortham for $60, the first month's rent in advance. J. H. Park deposited this check to the credit of his brother in a bank at Mexia, and on same date gave appellee a receipt for said first month's rent, signed, "J. H. Park, Agt." On December 6, 1924, after the controversy arose, J. H. Park sent appellee a check for $60 on said Mexia bank, signed, "P. S. Park per J. H. Park." All of the evidence, without any conflict, shows that about November 20, 1924, Lane was several months behind on his payment of rents for the hotel, and that he wanted some one to take the hotel at the same rate he was obligated to pay. Lane admitted that he agreed to vacate December 1, 1924, if he could get another place. J. H. Park admitted the execution of the lease as agent for his brother, P. S. Park, to appellee on November 20, 1924, to begin December 1, 1924, but contended said lease was conditioned upon Lane's vacating by said date. Said lease contained no such provision, and the jury found, in effect, there was no such condition.

The record shows that on December 6, 1924, after this controversy arose, J. H. Park wrote appellee a letter, in part as follows: "The contract that I handed you to take effect December, 1924, in the event Mr. Lane vacated the premises, is of no effect, in that Mr. Lane will not vacate the premises until May 1st, 1925, and possession thereof cannot be delivered to you on December 1st, 1924," etc. This letter was signed, "P. S. Park, per J. H. Park." There was no contention at this time that J. H. Park did not have the authority to execute the lease. Appellee testified: "On the first trial of this case I heard P. S. Park testify something about having told his brother to find a renter in place of Lane; he said: 'I wrote my brother and told him to get me a good renter when Lane is put out, a man that will pay the rent.'" Appellee further testified: "After the first trial of this case, I overheard a conversation between P. S. Park and Jack (John) Lane in regard to J. H. Park's authority to rent the hotel in question * * * Jack Lane said to P. S. Park: 'You swore on the stand that your brother wasn't authorized to lease that hotel,' and P. S. Park said: 'I know I did, that lease with Sullivan was all right, but you haven't split the money with me like you said you would.'" Mrs. J. A. Bishop, Miss Sallie Beene, and Mrs. A. J. Thomas all testified, in effect, that P. S. Park told them, or stated in their presence, that the hotel in question made him about $30 per day during the oil boom at Wortham.

We have not attempted to recite all the

evidence bearing upon the issue here involved. The record discloses that J. H. Park, as agent for P. S. Park, did execute a prior lease on this same property for the same time to Lane; that he did as such agent collect rents for his brother, execute receipts therefor, make deposits of such rents, have repairs made on said property, and draw checks on his brother's bank account to pay for same; that he did, as such agent, receive from appellee $60, the first month's rent, issue a receipt therefor, sign his brother's name to a replevy bond for $10,000 in this case. It is evident from all the evidence that J. H. Park, as agent for his brother, had, prior and up to the time this controversy arose, been in full control and management of the hotel and performing any and all acts pertaining to such management that P. S. Park himself could have performed, without any contention on his part that his brother had exceeded his authority, except in the execution of the lease to appellee, and it seems nobody made this contention until after this suit was filed and the oil boom had developed at Wortham. It is well settled in this state that agency and the authority of such agent can be shown by circumstantial evidence. Sargent v. Barnes (Tex. Civ. App.) 159 S. W. 366; Thompson v. Mills, 45 Tex. Civ. App. 642, 101 S. W. 560; Slaughter v. Coke County, 34 Tex. Civ. App. 598, 79 S. W. 863; 2 C. J. p. 944, § 708. In Corpus Juris, supra, it is said: "Circumstantial evidence is ordinarily competent to establish the fact or extent of an agency. Where such evidence is resorted to for the purpose of establishing agency, all the facts and circumstances showing the relation of the parties, and their treatment of each other, and throwing light upon the character of such relation, are admissible in evidence." But in this case, in addition to the circumstantial evidence, which we think of itself would have been sufficient, we have direct evidence tending to show that J. H. Park did have authority to execute the lease to appellee. We think the finding of the jury to the first special issue is amply supported by the evidence. Tabet v. Powell, 39 Tex. Civ. App. 465, 88 S. W. 273 (writ refused).

■ Appellant contends further that the court erred in first properly refusing to admit in evidence the contract signed by J. H. Park, agent, together with his acts, conduct, and declarations as far as they affected P. S. Park, and afterward admitting same, with the remark: "I rather think I will admit it for all purposes." Appellant's bill of exception shows; in effect, that in developing appellee's case the court refused to admit in evidence, as against P. S. Park, the lease contract and the evidence of the acts and declarations of J. H. Park; but afterward, when appellee was ready to rest, he re-offered said evidence, and the court admitted same, with the remark as above indicated.

Appellant objects especially to the statement of the court, "I rather think I will admit the testimony for all purposes." The appellee sued P. S. Park, J. H. Park, and John Lane, and sought judgment against all of said parties, and under appropriate pleadings, if the evidence had failed to show the agency of J. H. Park for P. S. Park, then J. H. Park would have been liable to appellee for the alleged damages; so the court correctly admitted said contract and the actions and declarations of J. H. Park and Lane, when first offered, but refused to admit same as against P. S. Park, as no prima facie case of agency of J. H. Park for P. S. Park at that time had been made. But at the time said evidence was re-offered, appellee had, by both competent circumstantial and direct evidence, made a prima facie case of agency on the part of J. H. Park for P. S. Park, and, this being true, the court was correct in allowing the testimony of the acts, admissions, and declarations of J. H. Park, the alleged agent, as binding upon P. S. Park in order that the entire case might be submitted.

■ It is elementary that agency cannot be proved by the acts and declarations of an alleged agent, but it is also true that, after sufficient competent evidence has been produced to make out a prima facie case of agency, such acts and declarations do become admissible as the acts and declarations of the principal, in order that the entire case may be passed upon by the court or jury. There was no error, in the admission of said evidence. Tabet v. Powell (Tex. Civ. App.) 78 S. W. 997 (writ refused); Madeley v. Kellam et al. (Tex. Civ. App.) 135 S. W. 659; White v. San Antonio Waterworks Co. (Tex. Civ. App.) 29 S. W. 256; Stringfellow v. Brazelton (Tex. Civ. App.) 142 S. W. 937 (writ refused); Latham v. Pledger, 11 Tex. 439; Mechem, Agency, § 106; Sargent ·v. Barnes (Tex. Civ. App.) 159 S. W. 366, on rehearing; Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 517 (writ refused); 2 C. J. p. 959, § 695, and authorities cited. In the case of Sullivan v. Fant, supra, in which a writ of error was refused, the court says: "We recognize that agency cannot be proved by the acts and declarations of the alleged agent alone. But appellants seem to concede in their brief that if there is prima facie proof of agency, then it is not error to admit the declarations and acts of the agent in order to prove what was done in the scope of his agency. It would be impossible (except in cases where the agency is admitted) to proceed any other way. Of course, it would be proper and advisable to instruct the jury not to consider the declarations as evidence of agency, but to consider them only if the agency was found to be established by other proper evidence."

■■ We think, in this case, if appellant had requested the court to instruct the jury not to consider the declarations of the al-

leged agent, as evidence of agency, but to consider them only on finding the existence of the agency by other evidence, the court should, and doubtless would, have given such instruction. However, the court was under no obligation to so limit the consideration of such declarations in the absence of a request therefor, and, as no such request was made, it was not error for him to fail to do so. Massie v. Hutchinson et al., 110 Tex. 558, 222 S. W. 962, and cases cited; Pyron v. Brownfield et al. (Tex. Civ. App.) 238 S. W. 725; Bourland et al. v. Huffhines (Tex. Civ. App.) 244 S. W. 847; Willis et al. v. First Nat. Bank (Tex. Civ. App.) 262 S. W. 851. Neither do we think there is any merit in appellant's contention that the remark of the court, above referred to, on the admission of said evidence, was calculated to improperly influence the jury.

Appellant contends further that the trial court erred in permitting appellee to testify that on the former trial of this case, appellant, P. S. Park, while on the witness stand, testified as follows: "He said I wrote my brother (J. H. Park) to get some good man in the hotel that will pay the rents when Lane is put out, is what he testified to." A declaration against the interest of a party litigant is always admissible in evidence against him, and the fact that such declaration was made under oath, while such litigant was testifying on a former trial, constitutes no exception to the general rule.

We have considered all of appellant's assignments, and, finding no reversible error, overrule same and affirmed the judgment of the trial court.